IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shehadeh N. Amer, : 
                 Petitioner : 
                  : 
                  :
      v. : No. 1382 C.D. 2017
                  : SUBMITTED: November 22, 2019
Workers' Compensation Appeal : 
Board (Hamid and Uninsured : 
Employers Guaranty Fund), : 
             Respondents : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED: January 9, 2020

Shehadeh N. Amer (Employer) petitions this Court for review of the August 31, 2017 order of the Workers' Compensation Appeal Board (Board) affirming a workers' compensation judge's (WCJ) award of total disability benefits to Kamal Abdel Hamid (Claimant). The issues presented on appeal are whether the WCJ prematurely closed the record, depriving Employer of the opportunity to present his defense, and whether the WCJ erred in finding Claimant was an employee entitled to benefits under the Workers' Compensation Act (Act).[1] After review, we vacate the Board's order and remand for further proceedings.

## I. Background

The circumstances regarding Claimant's injury are not in dispute. Employer owns and operates a Mr. Frosty ice cream truck. Certified Record (C.R.), Item No. 4. Employer pays rent for the garáge where the truck is stored and is responsible for

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

the cost of gas, insurance, and maintenance. Notes of Testimony (N.T.), 11/18/15, at 7-8. Employer also supplies the products sold from the truck. *Id.* at 8.

On May 14, 2015, Claimant slipped while operating Employer's truck and fractured his right foot. C.R., Item No. 2; WCJ Hearing, 4/28/16, Ex. C-5. Claimant filed a claim petition on September 15, 2015, alleging total disability from the May 14, 2015 injury. C.R., Item No. 2. Employer denied knowledge of Claimant's injury and asserted Claimant was not an employee. *Id.*, Item No. 4. Employer acknowledged he did not carry workers' compensation insurance, as he had no employees. *Id.* Thereafter, Claimant filed a claim petition against the Uninsured Employers Guaranty Fund (Fund).[2] The Fund denied liability for Claimant's injuries. *Id.*, Item No. 7.

A hearing scheduled for October 22, 2015 was continued to provide for Claimant's live testimony, which took place on November 18, 2015. Claimant testified that he and Employer are acquainted as neighbors, that they attend the same mosque, and that their children attend the same school. N.T., 11/18/15, at 26. In May 2015, Claimant discussed with Employer the possibility of purchasing his ice cream truck. *Id.* at 9. To that end, Claimant operated the truck with Employer for three days, beginning May 9, 2015. *Id.* at 16. Employer paid Claimant $150 for this three-day period, during which Employer explained the business and taught Claimant the route. *Id.* at 8, 18, 24. Thereafter, Claimant expected to receive $500 per week for operating the truck. *Id.* at 8. Claimant was paid in cash, with no deductions taken for insurance or "anything else." *Id.* at 9.

---

[2] Section 1602 of the Act, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. § 2702, establishes the Fund for the purpose of paying a claimant workers' compensation benefits where the employer otherwise liable for those benefits has failed to obtain insurance for workers' compensation liability.

After assisting Employer for three days, Claimant indicated he was no longer interested in purchasing the truck. *Id.* Employer offered to let Claimant continue operating the truck while Employer was out of the country for a period of time. *Id.* Claimant accepted this offer. *Id.* at 21. On May 12, 2015, the day Employer left the country, Employer and Claimant had an argument over the phone because Claimant was late driving the truck to a birthday party. *Id.* at 9, 22. Employer told Claimant he could either continue operating the truck, or leave the truck in front of his house and return the key. *Id.* at 10, 22. When Claimant finished working that day, he talked to Employer's wife and said he would continue to work until Employer returned from his trip. *Id.* at 10.

Claimant drove the truck again on May 13, 2015, following the schedule and route established by Employer. *Id.* at 24-25, 42. Claimant kept the cash he collected from his sales that day. *Id.* at 25. He used some of the cash to purchase additional supplies for the truck and kept the remainder for himself. *Id.* at 42. Claimant testified that he was supposed to receive "the rest of the money" once he "[paid] everything off." *Id.*

On May 14, 2015, Claimant injured his right foot after he slipped stepping down from the truck. *Id.* at 11. Claimant sought treatment the next day. *Id.* at 31. He notified Employer of the injury "one month or two weeks later," when Employer returned to the United States. *Id.* at 12. Claimant testified that the injury to his foot prevented him from operating the truck, as the job involved driving and standing. *Id.* at 13-14.

Following the conclusion of Claimant's testimony, the following exchange took place regarding Claimant's medical evidence.

> [WCJ]:  Okay. What are you doing for medical?

3

[Claimant's Counsel]: At this point I'm not sure if it's going to be a limited claim. I'll wait and see if [the Fund and Employer] get an [independent medical exam (IME)]. If Claimant is still disabled by that point, I will immediately proceed to schedule a medical deposition.

[WCJ]: Okay. Does either Employer [or Fund] want to schedule an IME?

[Fund's Counsel]: I don't have medical discovery yet. [Claimant's Counsel] has told me that he's going to forward that [by] email to me.

[Claimant's Counsel]: Counsel just entered their [sic] appearance yesterday, so that was the first I knew of them.

[WCJ]: Okay. So **as soon as that is forwarded, I will order the IME to take place** within 45 days in accordance with the [Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges (Rules).[3]]

*Id.* at 44-45 (emphasis added).

At a subsequent hearing on February 22, 2016, Claimant's counsel advised the disability claim was limited to 52 weeks and, consequently, the medical evidence submitted would consist of Claimant's medical reports.[4] WCJ Hearing, 2/22/16, at 5. The WCJ granted the Fund a two-week extension during which it was to determine whether it would schedule an IME. *Id.* at 6. Upon receipt of such notice, the WCJ would "ask Claimant to move forward." *Id.*

---

[3] 34 Pa. Code §§ 131.1 – 131.204.

[4] Section 422(c) of the Act provides that, where a claim involves 52 weeks or less of disability, medical reports are admissible as evidence and findings of fact may be based upon such reports. *Added by* Act of June 26, 1919, P.L. 642, 77 P.S. § 835.

4

A final hearing took place on April 28, 2016. The WCJ recited the relevant procedural history and stated:

> [WCJ]: At [the February 22, 2016] hearing, I specifically indicated that the [Fund] needed to let me know within two weeks if they were [sic] getting an IME, otherwise that would be barred and we would be closing at the next hearing, on today's date. We are closing today.

WCJ Hearing, 4/28/16, at 6.

The WCJ accepted Claimant's exhibits, including his medical records. Neither the Fund nor Employer submitted evidence for the WCJ's consideration.

After reviewing Claimant's medical records and his testimony, the WCJ circulated a decision on October 27, 2016, granting the claim petitions against Employer and the Fund. Claimant was deemed a credible witness, as the WCJ observed his demeanor during his testimony. Finding of Fact (F.F.) No. 15. This testimony corroborated Claimant's unrebutted medical evidence, which the WCJ likewise found credible. F.F. No. 16.

As to the central issue identified by the WCJ – whether Claimant was Employer's employee – he specifically credited Claimant's testimony as follows. Employer owned the truck and he was responsible for renting the garage where it was stored and paying for its gas, maintenance, and insurance. F.F. No. 8(b). Employer supplied the products sold from the truck and determined the route to be followed as well as the hours of operation. *Id.* Claimant did not rent the truck from Employer. *Id.* Rather, Employer paid Claimant for the hours he operated the truck. *Id.* While Claimant spoke with Employer about buying the truck, Claimant unequivocally testified that he informed Employer he was no longer interested. F.F. No. 17(b). Claimant was then provided the opportunity to operate the truck for Employer while he was out of town. F.F. No. 8(d). Employer paid Claimant wages

5

of $150 the first three days he operated the truck and thereafter Claimant expected to receive $500 per week. F.F. No. 8(c). These findings led the WCJ to determine Claimant was an employee of Employer on May 14, 2015, when he sustained a work injury to his right foot after slipping on the steps of the truck while in the course and scope of his employment. F.F. No. 17.

Claimant notified Employer of the May 14, 2015 injury approximately two weeks later when Employer returned to the United States. F.F. No. 8(e). Claimant was unable to continue operating the truck because the job required he use his right foot to drive and then stand while selling products from the truck. *Id.* Claimant's medical records indicated that, as of March 7, 2016, Claimant had no limitations in his daily activities and his treatment goals had been met. F.F. No. 13; Ex. C-5.

The WCJ further found that, at the close of the November 18, 2015 hearing, he "ordered that Employer and the [Fund] schedule any [IME] within 45 days and to move forward with their evidence in accordance with the [Rules]." F.F. No. 9. Neither Employer nor the Fund indicated at the February 22, 2016 hearing that they intended to submit any evidence beyond an IME, if they chose to perform one. F.F. No. 10. Similarly, at the April 28, 2016 hearing, neither Employer nor the Fund indicated they intended to request an IME or submit evidence. F.F. No. 11. Both Employer and the Fund were provided a "full and fair opportunity" over the course of six months to present a defense. F.F. No. 12. Employer and the Fund failed, however, to communicate to the WCJ the identities of any fact witnesses or evidence they intended to submit to the court, or submit proof Claimant's counsel received such communication, and no good cause was set forth explaining their failure to provide such information. *Id.* Consequently, the Fund and Employer failed to

6

present evidence that refuted or rebutted Claimant's medical evidence and testimony.  F.F. No. 14.

The WCJ noted that the Fund and Employer requested a continuance at the April 28, 2016 hearing for the purpose of establishing a defense.[5]  F.F. No. 11 n.1. The WCJ opined that such a request was not consistent with Section 131.61(a)-(c) of the Rules, which provides, in relevant part, that parties must exchange all items and information to be used in prosecuting or defending a case no later than 45 days after the first pretrial hearing.[6]  34 Pa. Code § 131.61(a)-(c).  Neither the Fund nor

---

[5] This request is not reflected in the transcript of the April 28, 2016 hearing.

[6] Section 131.61(a)-(c) of the Rules provides as follows:

> (a) **Parties shall exchange all items and information**, including medical documents, reports, records, employment records, wage information, affidavits, tapes, films and photographs, lists of witnesses, CD ROMs, diskettes and other digital recordings, **to be used in or obtained for the purpose of prosecuting or defending a case**, unless the foregoing are otherwise privileged or unavailable, whether or not intended to be used as evidence or exhibits.

> (b) The moving party shall provide the items and information referred to in subsection (a) to the responding party prior to the commencement of the first pretrial hearing or hearing actually held. **The responding party shall provide the items and information referred to in subsection (a) to the moving party no later than 45 days after the first pretrial hearing or hearing actually held.**

> (c) **A witness whose identity has not been revealed** as provided in subsections (a) and (b) **may not be permitted to testify** on behalf of the defaulting party **unless the testimony is allowed within the judge's discretion.**

34 Pa. Code § 131.61(a)-(c) (emphasis added).

7

Employer provided the WCJ with the names of any witnesses they wished to have testify. F.F. No. 11 n.1. Given the passage of six months, during which Employer and the Fund failed to schedule any depositions or an IME or notify the WCJ they would present any factual testimony, a continuance was not appropriate, in light of the Rules and "the Workers' Compensation Office of Administration's own internal policy of a quick and efficient adjudication system." *Id.*

The WCJ ordered Employer to pay Claimant total disability benefits at a rate of $450 per week, based on an average weekly wage of $500, for the period of May 14, 2015 through March 7, 2016, after which date Claimant's benefits were suspended. Conclusion of Law No. 3; WCJ Decision at 10. Employer was directed to pay the reasonable and necessary medical expenses related to Claimant's May 14, 2015 work injury. WCJ Decision at 10. As no evidence was presented to rebut Claimant's testimony and evidence, Employer's contest of the claim was not reasonable[7] and he was directed to pay unreasonable contest counsel fees as well as litigation costs. *Id.*; F.F. No. 19. The Fund was directed to pay Claimant's award,

---

[7] Section 440 of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996, provides that:

> [i]n any contested case where the insurer has contested liability in whole or in part, . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

8

with the exception of the unreasonable contest fees,[8] in the event Employer defaulted. WCJ Decision at 10.

Employer appealed, arguing that the WCJ erred in choosing certain portions of Claimant's testimony to support the findings of fact and conclusions of law, while ignoring other substantial competent testimony. C.R., Item No. 9. Employer's counsel maintained that counsel of record was on vacation at the time of the April 28, 2016 hearing and substitute counsel was not aware of the hearing date until April 25, 2016. *Id.* at 2. As such, Employer's substitute counsel did not have adequate time to prepare a defense. *Id.* However*,* Employer's request for additional time to produce witnesses was denied by the WCJ. *Id.*

The Board affirmed, concluding the evidence supported the WCJ's determination that Claimant and Employer had an employer-employee relationship. The truck was owned and maintained by Employer, who also provided the supplies necessary for its operation. Bd. op. at 4. Claimant merely operated the truck along a route determined by Employer. *Id.* Claimant was paid on a daily or weekly basis, not per job. *Id.* The nature of the work was fairly unskilled, as Claimant simply had to drive the truck and serve ice cream from it. *Id.* Employer had the right to terminate Claimant at any time because Employer owned and controlled all aspects of the truck. *Id.* at 4-5. These facts established a pattern of control by Employer over Claimant's work. *Id.*

As to whether the WCJ erred in closing the record on April 28, 2016, the Board noted that neither the Fund nor Employer presented evidence following the initial hearing on October 26, 2015 or at the subsequent hearing on February 22, 2016. Bd. op. at 5-6. The WCJ granted the parties a two-week extension in which

---

[8] Section 1601 of the Act, added by the Act of November 9, 2006, 77 P.S. § 2701, exempts the Fund from imposition of unreasonable contest fees.

9

they could seek an IME. *Id.* at 6. No IME was obtained and no evidence was introduced by the Fund or Employer at the April 28, 2016 hearing. *Id*. The Board found no abuse of discretion on the part of the WCJ where the Fund and Employer had six months to obtain evidence and failed to produce any by the time the record was closed. *Id.* This appeal followed.

## II. Issues

On appeal,[9] Employer argues the WCJ prematurely closed the record, thus depriving him of the opportunity to present a defense, and the WCJ erred in finding Claimant was an employee entitled to benefits under the Act.

## III. Analysis

First, we address whether the WCJ erred in closing the record as of the April 28, 2016 hearing date.

Employer argues[10] the WCJ erred in rendering a decision based on an incomplete record. Employer's counsel had yet to receive any medical records as of the November 18, 2015 hearing. The WCJ ordered that an IME would take place within 45 days of counsel's receipt of those records. Employer asserts that Claimant's counsel had yet to produce all his medical evidence by the date of the subsequent hearing held on February 22, 2016. The Fund's counsel was granted a

---

[9] Our review of an order of the Board is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015). A determination as to the existence of an employer/employee relationship is a question of law. *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.),* 134 A.3d 1156, 1161 n.4 Pa. Cmwlth. 2016). As to questions of law, our scope of review is plenary, and our standard of review is *de novo. Id.*

[10] By letter dated February 12, 2018, the Fund indicated to this Court it would not file a separate brief but would instead adopt the arguments set forth in Employer's brief.

10

two-week extension in which to determine whether an IME would be scheduled. The WCJ then stated that "as soon as we hear from the Fund then I'll ask Claimant to move forward." WCJ Hearing, 2/22/16, at 6. Employer maintains the WCJ never indicated the record would close on the next hearing date. Further, Section 131.61(a)-(c) of Rules, which the WCJ charged the Fund and Employer with violating, does not require counsel to notify a WCJ of possible witnesses. Rather, it mandates that the *parties* exchange all items and information, including lists of witnesses.

Employer notes that Section 131.52 of the Rules provides that the WCJ shall establish specific deadlines for the presentation of evidence by the parties and dates for future hearings. The WCJ never established a specific date for the presentation of Employer's fact witnesses, nor did he set April 28, 2016 as the final hearing date. Finally, Employer argues Claimant's counsel cannot credibly maintain he was unaware of Employer's identity, as Employer is the individual named as a defendant in both claim petitions filed by Claimant.

Claimant maintains Employer was properly notified of his obligation to present evidence following the November 18, 2015 hearing. Following that hearing, neither defense counsel provided any discovery to Claimant, nor did they schedule an IME or identify any witnesses. Such failure to act directly violated the Rules. Employer and the Fund were provided another opportunity to obtain evidence after the February 22, 2016 hearing. They once again failed to act, with no explanation provided at the final hearing on April 28, 2016. In the absence of good cause for these failures, Claimant argues the WCJ properly exercised his discretion in denying the continuance request and closing the record.

11

Section 131.61(a) of the Rules requires the parties to exchange "all items and information" to be used in prosecuting or defending a claim. 34 Pa. Code § 131.61(a). Pursuant to Section 131.61(b) of the Rules, the responding party must provide its information "no later than 45 days after the first pretrial hearing or hearing actually held." 34 Pa. Code § 131.61(b). A witness whose identity has not been revealed may not be permitted to testify unless allowed within the WCJ's discretion. 34 Pa. Code § 131.61(c).

As to closing of the record by a WCJ, Section 131.101(c)-(e) of the Rules provides, in pertinent part:

> (c) **The evidentiary record is closed when the parties have submitted all of their evidence and rested or when the judge has closed the evidentiary record on a party's motion or the judge's own motion.** If the judge determines that additional hearings are necessary, or that additional evidence needs to be submitted, or if the judge schedules additional written or oral argument, the evidentiary record may be held open by the judge. When the judge determines that the evidentiary record is closed, the judge will notify the parties that the evidentiary record is closed on the record or in writing.

> (d) A party may move to close the evidentiary record and all other parties shall advise the judge within 20 days as to whether the evidentiary record is closed or whether there is additional evidence to be submitted. At the conclusion of the 20-day period, the judge will determine whether the evidentiary record will be closed or will remain open.

> (e) **A judge may close the evidentiary record** on the judge's own motion even if all parties have not rested **when the judge determines that the parties have had reasonable opportunity to present their case, provided that reasonable notice of the closing of the evidentiary record has been given to all parties.**

34 Pa. Code § 131.101(c)-(e) (emphasis added).

12

"[T]he interests of justice and a fair resolution of claims preclude a premature closing of the record." *Essi Int'l, Inc. v. Workmen's Comp. Appeal Bd. (Bowman)*, 573 A.2d 677, 678 (Pa. Cmwlth. 1990). Our review of prior decisions of this Court indicates the key factors in determining whether a WCJ prematurely closed the record are the nature and extent of the notice provided to the parties and whether a party's failure to present evidence was caused by its own dilatory conduct.

In *Essi*, this Court held that closure of the record before either side rested its case necessitated a remand for completion of the record. *Essi*, 573 A.2d at 678. The relevant facts are as follows. The claimant filed a claim petition after suffering a work injury when lightning struck an airplane upon which he was working. The resultant claim petition generated five separate hearings during which the claimant presented testimony and medical evidence. At the fifth hearing, the claimant requested a continuance so that he could schedule the deposition of his chief medical witness. The request was granted. Approximately one month prior to the next hearing date, the referee[11] sent notice to the parties of the final hearing date. The notice indicated that all additional evidence should be presented at that hearing and the case would be decided on the basis of the record existing at the conclusion of the hearing. The referee warned the parties that no further continuances would be granted.

The claimant's attorney missed the final hearing due to a conflict and the parties had agreed on an additional continuance so that both parties could depose additional medical witnesses. The referee, however, denied the employer's

---

[11] WCJs were previously referred to as referees under the Act. *See* Section 401 of the Act, *amended by* the Act of July 2, 1993, P.L. 190, 77 P.S. § 701 (the term referee shall mean a WCJ and any reference to a workmen's compensation referee shall be deemed to be a reference to a WCJ).

continuance request based on his prior notice that the record would close at the final hearing. The referee's decision in favor of the claimant was appealed to the Board, which affirmed, dismissing the employer's argument that a remand was required in light of the referee's premature closing of the record.

This Court vacated the Board's order and remanded the matter for further proceedings. Because the referee closed the record before all evidence from *both* sides was admitted, the decision entered was based on "an incomplete and tainted record that by its very nature could not yield competent evidence." *Id.* at 678. While not condoning the inaction of the parties that failed to schedule depositions prior to the final hearing, or to inform the referee of their agreement to continue what was scheduled to be the final hearing, the Court opined that the Board's review of a record that lacked full consideration by the referee due to its incompleteness could lead to an affirmance that "erroneously appear[ed] sustainable." *Id.* at 679 (quoting *Joseph v. Workmen's Comp. Appeal Bd. (Delphi Co.)*, 560 A.2d 755, 757 (Pa. 1989)).

This Court drew a contrary conclusion in *Fremont Farms v. Workmen's Compensation Appeal Board (Phillips)*, 608 A.2d 603, 604 (Pa. Cmwlth. 1992), wherein an employer was precluded by a referee from presenting evidence that disputed the claimant's wages and challenged whether the employer received notice of the claimant's injury. At an initial hearing before the referee, the employer was directed to schedule and perform an IME of the claimant. The employer failed to do so. Following submission by claimant of his medical witness's deposition, which the employer's counsel failed to attend, the referee instructed the employer to give notice within 10 days if he desired to cross-examine the medical witness. Any such cross-examination was to take place within 45 days. The employer did not comply

14

with this instruction. The referee granted the employer an additional 30 days in which to schedule and perform an IME and informed the employer's counsel that, if no such examination was performed, a motion by the claimant's counsel to close the record would be accepted at the next hearing. The employer's counsel ultimately notified the referee he wished to cross-examine the claimant's medical witness, however, as of the date of the final hearing, no such cross-examination had taken place or been scheduled. The employer further neglected to present evidence that any attempt was made to schedule am IME. Consequently, upon motion by the claimant's counsel, the referee closed the record.

The employer appealed the referee's subsequent grant of benefits to the Board, which affirmed. In affirming the Board, this Court noted that, over the course of three hearings, the employer never indicated that it wished to present testimony relative to its receipt of any notice that an injury occurred, or that the employer was challenging claimant's testimony regarding his weekly wage. Even when notified that the referee was contemplating closing the record, the employer failed to notify the referee it wished to present such evidence. *Essi* was deemed distinguishable, in part because both parties in *Essi* intended to introduce additional evidence. Furthermore, the employer in *Essi* had not failed to meet multiple deadlines imposed by the referee and the referee had not warned the employer that the record would close if a deadline was not met. Rather, the referee notified the parties by mail that the next hearing would be the final hearing.

In *Cipollini v. Workmen's Compensation Appeal Board (Philadelphia Electric Company)*, 647 A.2d 608 (Pa. Cmwlth. 1994), the claimant was granted multiple continuances over a nine-month period for purposes of deposing her fact and medical witnesses. After granting a final 60-day continuance, the referee

15

indicated that the record would close when the period ended. The claimant failed to act within the 60-day period imposed by the referee, who closed the record on the date of the last hearing. As the claimant failed to present any evidence to support her claim, the petition was marked withdrawn with prejudice for failure to prosecute. The claimant appealed to the Board, which affirmed. On appeal, this Court affirmed, citing *Fremont Farms*, as the claimant failed over the course of several months to depose, or even schedule for deposition, her witnesses, despite having been warned by the referee that the record would close.

More recent decisions follow this general approach that, where a party fails to comply with a WCJ's litigation schedule, the WCJ may close the record and preclude the submission of evidence, provided he first warns the parties that the record will close. *See Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ. and PMA Grp.)*, 942 A.2d 939 (Pa. Cmwlth. 2008) (WCJ's preclusion of evidence did not constitute an abuse of discretion where nearly 18 months passed before employer expressed a desire to depose witness); *Philadephia v. Workers' Comp. Appeal Bd. (Rooney)*, 730 A.2d 1051 (Pa. Cmwlth. 1999) (no abuse of discretion by WCJ in closing record where employer failed to depose witness by deadline imposed by the WCJ and employer received notice record would close by that date); *Bachman Co. v. Workmen's Comp. Appeal Bd. (Spence)*, 683 A.2d 1305 (Pa. Cmwlth. 1996) (WCJ's closure of record did not constitute an abuse of discretion where employer repeatedly failed to present evidence despite continuances granted by the WCJ).

With this legal precedent, and the relevant Rules, in mind, we now turn to the facts and whether they support the Board's conclusion that the WCJ did not abuse his discretion in closing the record before Employer could introduce his evidence.

At the conclusion of the November 18, 2015 hearing, the WCJ stated that "**as soon as [Claimant's medical records are] forwarded, I will order the IME to take place within 45 days in accordance with the [Rules]."** N.T., 11/18/15, at 45 (emphasis added). It is clear that the 45-day period during which Employer was required to schedule the IME would not commence until Claimant provided Employer his medical records. Claimant's medical records were not formally introduced until the final hearing held on April 28, 2016. WCJ Hearing, 4/28/16, at 9. It is not clear whether Employer received these documents prior to that date.[12]

The following exchange took place between the WCJ and Employer's counsel at the hearing held on February 22, 2016.

> [WCJ]: The Fund has indicated to me that they [sic]will let me know within two weeks whether they [sic] are getting an IME if that is now overdue; is that correct?
>
> [Employer's Counsel]: That is correct, Your Honor.
>
> [WCJ]: So we'll grant the two-week extension . . .
>
> [Employer's Counsel]: Thank you.
>
> [WCJ]: . . . on that and **as soon as we hear from the Fund then I'll ask Claimant to move forward.**

WCJ Hearing, 2/22/16, at 5-6 (emphasis added).

These statements by the WCJ represent the sum total of his oral directives establishing a timeline for the production of Employer's and the Fund's medical evidence and for closure of the record. During the April 28, 2016 hearing, the WCJ characterized his February 22, 2016 statement bolded above as an indication that the

---

[12] Claimant's assertion in his principal brief that Employer received a set of the "expected medical exhibits" at the February 22, 2016 hearing, Claimant's Brief at 10, finds no support in the transcript of that hearing. The WCJ's summary of the February 22, 2016 hearing likewise makes no mention of Claimant providing a set of medical exhibits to Employer at that time. F.F. No. 10.

Fund had two weeks to declare its intention to schedule an IME and "otherwise that would be barred and we would be closing at the next hearing, on today's date." WCJ Hearing, 4/28/16, at 6.

We cannot agree with the WCJ's characterization of his statement, which neither implicitly nor explicitly establishes a deadline upon which the record would close. Furthermore, while we do not condone Employer's seemingly lackadaisical approach to defense of his position, we have not perceived on the part of Employer or the Fund a flagrant disregard of the WCJ's direction to proceed similar to those which helped form the basis for our decisions in *Fremont Farms* and *Cipollini.*

As to Employer's alleged failure to comply with the requirements of Section 131.61 of the Rules, Employer is correct that Section 131.61 contemplates an exchange of information between the parties. The WCJ found that neither Employer nor the Fund identified any fact witnesses "to the Court." F.F. No. 12. The WCJ further found that Employer and the Fund submitted no "proof" that Claimant's counsel was advised of the witnesses and evidence they intended to introduce. *Id.* It is notable, however, that the WCJ at no time during any of the hearings that took place requested such proof of Employer or the Fund, and Claimant's counsel raised no objections that Employer or the Fund failed to exchange information as required by Section 131.61. As such, the WCJ's findings in that regard lack support in the record.

The clear language of Section 131.101(e) provides that the WCJ may close the record even where all parties have not rested when the WCJ determines they had reasonable opportunity to present their case and "**provided that reasonable notice of the closing of the evidentiary record has been given to all parties.**" 34 Pa. Code § 131.101(e) (emphasis added).

In the absence of the reasonable notice required by Section 131.101(e), and in light of this Court's prior decisions as discussed herein, we cannot agree with the Board that the WCJ committed no error when he closed the record before permitting the Fund and Employer to present evidence in their defense. Accordingly, we vacate the order of the Board and remand this matter to the Board for further remand to the WCJ. On remand, the WCJ shall consider the evidence of Employer and the Fund, which they shall submit without undue delay and within the time period prescribed by the WCJ, and make appropriate findings of fact and conclusions of law based on an analysis of the complete record.

Given our disposition on the first issue, we need not address whether the WCJ erred in finding Claimant was an employee entitled to benefits under the Act.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shehadeh N. Amer, : 
               Petitioner : 
                : 
        v. : No. 1382 C.D. 2017 
                : 
Workers' Compensation Appeal : 
Board (Hamid and Uninsured : 
Employers Guaranty Fund), : 
             Respondents : 

## **O R D E R**

AND NOW, this 9th day of January, 2020, the August 31, 2017 order of the Workers' Compensation Appeal Board (Board) is hereby vacated. This matter is remanded to the Board for further remand to the workers' compensation judge (WCJ) for further proceedings. On remand, the WCJ shall consider the evidence submitted by Kamal Abdel Hamid and the Uninsured Employers Guaranty Fund within a time frame prescribed by the WCJ, and make appropriate findings of fact and conclusions of law based on the complete record, consistent with the foregoing opinion.

Jurisdiction is relinquished.

 

_____
ELLEN CEISLER, Judge